COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO

| | |
|---|---|
| JEREMY LOY,<br>17680 CLARKS RUN ROAD<br>MOUNT STERLING, OHIO 43143<br><br>      Plaintiff,<br><br>v.<br><br><br>ANDERSON CONCRETE CORP.,<br>400 FRANK ROAD<br>COLUMBUS, OH 43207<br><br>    <u>Please Serve:</u><br>    Jessica Anderson<br>    Registered Agent<br>    400 Frank Road<br>    Columbus, Ohio 43207<br><br>AND<br><br>TEAMSTERS LOCAL UNION 284,<br><br>    <u>Please Serve:</u><br>    Joe Sphar<br>    Registered Agent<br>    555 East Rich Street<br>    Columbus, Ohio 43215<br><br>      Defendants. | Case No.<br>Judge:<br><br><br>**PLAINTIFF'S COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

## <u>PLAINTIFF'S, JEREMY LOY, COMPLAINT AND DEMAND FOR JURY TRIAL</u>

    Plaintiff, Jeremy Loy, by and through its counsel Mallory Law Office, LLC, hereby files its Complaint with jury demand against Anderson Concrete Corp. and Teamsters Local Union 284 (collectively, "Defendants"), and states as follows:

## <u>PARTIES</u>

1.  Plaintiff, Jeremy Loy ("Jeremy"), is an individual with an address of 17680 Clarks Run Road, Mount Sterling, Ohio 43143, who participated in the actions and events that are the subject of this Complaint.

2.  Defendant Anderson Concrete Corp. ("Anderson") is a for-profit corporation organized and existing under the laws of the State of Ohio.

3.  Defendant Teamsters Local Union 284 ("Teamsters") is an unincorporated non-profit association organized and existing under the laws of the State of Ohio.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this dispute because the amount in controversy exceeds $15,000.

5.  This Court has jurisdiction over Anderson as an entity formed under the laws of Ohio and as an entity having its principal place of business in Franklin County, Ohio.

6.  This Court has jurisdiction over Teamsters as an entity formed under the laws of Ohio and as an entity having its principal place of business in Franklin County, Ohio.

7.  Venue for this action appropriately lies with this Court because it concerns the transaction of business and an incident occurring in Franklin County, Ohio and the Defendants are both located in Franklin County, Ohio, and routinely conduct business in Franklin County, Ohio.

## ALLEGATIONS COMMON TO ALL COUNTS

8.  Anderson is an established concrete company that has been in business for over one hundred years, operating ninety trucks and six plants and supplying ready-mixed concrete to customers in Central Ohio.

9.  Teamsters is the exclusive collective bargaining agent responsible for representing Anderson truck drivers' employment rights pursuant to the Agreement between Teamsters and

Anderson dated March 18, 2024 (the "Employment Contract"), where all Union Members are also Parties to the Employment Contract, or in the alternative, are third-party intended beneficiaries to the Employment Contract.

10. Jeremy first began working for Anderson in the fall of 2017 hauling concrete as a CDL driver until the fall of 2019, when he was promoted to work as a dispatcher in the office. Jeremy left Anderson in late 2020 but returned in September 2022. Jeremy left Anderson the second time in July of 2023 and returned on April 29, 2024.

11. On September 26, 2024, after getting his truck loaded with concrete outside of Plant Two, Jeremy approached the Field Man Supervisor, Matthew Tanner ("Tanner") to ask about the remaining job scope. At the same time, Tanner was testing the quality of the concrete load in another truck, driven by Mitchell Herbert ("Mitchell").

12. Jeremy, Tanner, and Mitchell began having a casual-friendly conversation, with Jeremy facing Tanner and Mitchell facing Jeremy, Tanner turned his back to continue checking Mitchell's concrete load, when suddenly and for reasons currently unknown to Plaintiff, Mitchell swung at Jeremy's head, not making contact.

13. After the first swing, Jeremy still facing Tanner, then turned to Mitchell and said to Mitchell "what are you doing, don't do that" and turned back to continue talking to Tanner, when Mitchell swung at his head the second time, hitting Jeremy's head and knocking off his baseball hat, Mitchell then took an offensive position and raised his fists toward Jeremy.

14. Jeremy quickly positioned himself behind Mitchell, reaching his right arm over Mitchell's right shoulder and reaching his left arm under Mitchell's left arm, and interlocking his hands in an effort to restrain Mitchell.

15. Mitchell began resisting Jeremy's restraints by flailing his body to free himself and Jeremy then asked Mitchell if he was done, although Mitchell continued trying to fight Jeremy.

16. Jeremy, still restraining Mitchell from behind, pulled both Mitchell and himself to their sides onto the ground, while Mitchell continued trying to fight Jeremy, Jeremy once again asked Mitchell if he was done fighting.

17. When Jeremy felt Mitchell relax, he helped Mitchell stand up and the two went back to work.

18. On information and belief, Mitchell reported Jeremy to Anderson after the September 26, 2024 incident (the "incident") and both employees were called into the office by Human Resources, run by one man, Brandon Double ("Brandon") on September 27, 2024.

19. Jeremy was questioned about the incident by Brandon; although he was not asked for a formal written statement, Jeremy explained that he felt he had to defend himself against Mitchell's attack but stated he held no grudge against Mitchell and was surprised to learn Mitchell, the aggressor, reported him.

20. Also present during this initial meeting was Larry McDaniel, a mechanic for Anderson and Union Steward responsible for representing Jeremy pursuant to the Employment Contract, and Mark McMannis, the supervisor of all truck drivers.

21. During the initial meeting, Jeremy explained the incident and answered Brandon's questions; although Larry did not say anything to Jeremy's defense or to support Jeremy, Brandon told Jeremy they would let him know whether he was to be fired.

22. A short time later that morning, Brandon fired Jeremy from Anderson for violating the Employment Contract, specifically alleging Jeremy violated Work Rule 14, the Fighting Rule, which defines fighting as "physically assaulting any person or acting with intent to inflict bodily

injury to another employee." Larry, the Union Steward, once again did not speak up for Jeremy aside from telling Jeremy that Mitchell would also be fired. (Exhibit B, Page 37 of the Employment Contract.)

23. Jeremy and Mitchell appealed their termination from Anderson through Teamster's Business Agent, Josh Kincaide ("Josh"), pursuant to Step One under Article 7 of the Employment Contract Grievance and Arbitration Procedure. (Exhibit C, Page 6 of the Employment Contract.)

24. Josh, representing both Jeremy and Mitchell, attempted to persuade Jeremy to allege to Anderson that he was "horseplaying" with Mitchell and argued that they were just doing grown-man things on the day of the incident. Jeremy refused, insisting that he was defending himself and had no idea why Mitchell attacked him.

25. Upon information and belief, Mitchell did report that he was horseplaying that day and was subsequently reinstated as a truck driver at Anderson on or around mid-October in 2024.

26. Jeremy continued to appeal his termination through Josh, the Business Agent, pursuant to Step Two of Article 7, which requires Josh to meet with Brandon to ask Brandon to reconsider Jeremy's termination once again. (Exhibit C, Page 6 of the Employment Contract.)

27. Unsuccessful in Step Two of his appeal before Anderson, Jeremy, Josh, and Shane Roberts ("Shane") another Union Steward, presented Jeremy's case to Teamsters Board of Directors for a vote on November 26, 2024 to determine whether Teamsters would file a Demand for Arbitration against Anderson on behalf of Jeremy pursuant to Section 4, Arbitration under Article 7, which states that "[i]f the Union wishes to proceed further, it must file a written notice with Personnel Manager of its request to submit the grievance to arbitration, within sixty (60) calendar days of receipt of the Company's answer at Step 2." (Exhibit C, Page 6 of the Employment Contract.)

28. Teamsters declined to pursue Arbitration; however, it did not provide a reason for its decision in the letter to Jeremy dated December 3, 2024. (Exhibit E, Letter from Teamsters.)

29. Pursuant to Article 7, Section 7, "[a] grievance may be brought by any member of the bargaining unit or the Union"; however, pursuant to the Employment Contract Article 7, Section 4, only Teamsters is required to pursue its grievance in arbitration. (Exhibit C, Page 6 of the Employment Contract.)

## COUNT ONE: BREACH OF CONTRACT

### (Anderson)

30. Plaintiff hereby restates and incorporates by reference the allegations contained in Paragraphs 1-29 of this Complaint as though fully restated here.

31. Anderson, Teamsters, and its Union Members, which Members consist of the majority of the truck drivers employed by Anderson, are all parties to the Employment Contract dated March 18, 2024, or in the alternative, the Union Members are third-party intended beneficiaries of the Employment Contract.

32. Pursuant to Article 9 of the Parties' Employment Contract, "[n]o employee who has completed the probationary period may be discharged or disciplined except for just cause or for violation of the Company's Work Rules." (Exhibit D, Page 9 of the Employment Contract.)

33. Pursuant to Article 6, of the Parties' Employment Contract, the probationary period ends after 90 days of employment.

34. At the time of the September 26, 2024 incident, Jeremy, having returned to Anderson on April 29, 2024, had been employed by Anderson for approximately 150 days and was beyond the probationary period.

35. On September 27, 2024, Anderson fired Jeremy without cause in breach of the Parties Employment Contract, Article 9, stating that self-defense constitutes "Fighting" pursuant to Rule 14.

36. Jeremy, a Union Member and employee of Anderson, was and continues to be ready, willing, and able to work for Anderson and insists that self-defense is not included within the Employment Contract's Rule 14 definition of "Fighting," which is defined as "physically assaulting any person or acting with intent to inflict bodily injury to another employee." (Exhibit B, Page 37 of the Employment Contract.)

37. As a result of Anderson's breach of contract, Jeremy lost his job, medical care, and 401(k) and has been damaged in an amount reasonably believed to be $16,335 in lost wages, $5,015.67 in lost medical coverage, and $550 in lost 401(k) benefits, which is continually increasing as Jeremy has been unable to find new employment.

## COUNT TWO: BREACH OF DUTY OF FAIR REPRESENTATION

### (Teamsters)

38. Plaintiff hereby restates and incorporates by reference the allegations contained in Paragraphs 1-37 of this Complaint as though fully restated here.

39. Teamsters, the exclusive collective bargaining agent responsible for representing Anderson truck drivers' employment rights pursuant to the Agreement between Teamsters and Anderson dated March 18, 2024, has a duty to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

40. Teamsters breached this duty when its Business Agent, Josh Kincaid, represented both Jeremy and Mitchell, a clear conflict of interest in bad faith.

41. Teamsters further breached this duty when Josh aggressively tried to persuade Jeremy to dishonestly allege that he was horseplaying with Mitchell instead of telling Anderson the truth, that his conduct on the day of the incident was in self-defense.

42. Teamsters even further breached its duty of fair representation on or around October 7, 2024, when on a call with Josh, Jeremy refused to allege that he engaged in horseplay, Josh became audibly agitated with Jeremy, raising his voice toward Jeremy, using foul language, and insisting that he knows how to do his job.

43. Teamsters even further breached its duty again on November 26, 2024, when its Board of Directors arbitrarily declined to pursue arbitration on behalf of Jeremy and failed to give any reason for its decision, even though it appears to be a meritorious claim.

44. Pursuant to Article 7, Section 8, an arbitrator is permitted to make the grievant whole, including "lost wages, reinstatement, elimination of discipline, placement in a position to which the grievant is entitled, and order to take or not to take pertinent steps in the future, or other similar limitations designed to make the grievant whole for any wrong suffered." (Exhibit C, Page 7 of the Employment Contract.)

45. As a result of Teamsters' breach of its duty to fairly represent Jeremy, Jeremy was not reinstated at Anderson and continues to suffer lost wages, medical care, and 401 (k) and has had to bring this suit incurring reasonable attorney's fees and has been damaged in an amount reasonably believed to be $16,335 in lost wages, $5,015.67 in lost medical coverage, $550 in lost 401 (k) benefits, and reasonable attorney's fees in the amount of $2,500.00, which is continually increasing as Jeremy has been unable to find new employment.

## COUNT THREE: DECLARATORY RELIEF

**(Ohio Revised Code Chapter 2721)**

46. Plaintiff hereby restates and incorporates by reference the allegations contained in Paragraphs 1-45 of this Complaint as though fully restated here.

47. Under Ohio Revised Code Chapter 2721, this Court "may declare rights, status, and other legal relations whether or not further relief is or could be claimed."

48. Under the Employment Contract, Work Rule 14 defines fighting as "physically assaulting any person or acting with intent to inflict bodily injury to another employee." (Exhibit B, Page 37 of the Employment Contract.)

49. Jeremy prays for a declaration from this Court that self-defense is not within the Employment Contract Work Rule 14's definition of "Fighting."

50. Jeremy further prays for a declaration from this Court that self-defense is a recognized right under Ohio law pursuant to Ohio Revised Code Section 2901.09.

## PRAYER FOR RELIEF

WHEREFORE, Jeremy respectfully prays the Court enter judgment against Defendants for the following relief:

1. Damages in an amount to be proven at trial, but reasonably believed to exceed $16,335.00 in lost wages, which amount is continually increasing;

2. Damages in an amount to be proven at trial, but reasonably believed to exceed $5,015.67 in lost medical benefits, which amount is continually increasing;

3. Damages in an amount to be proven at trial, but reasonably believed to exceed $550.00 in retirement income, which amount is continually increasing;

4. Damages in an amount to be proven at trial, but reasonably believed to exceed $2,500 in reasonable attorney's fees, which amount is continually increasing;

5. An Order from this Court requiring Anderson to reinstate Jeremy to his position as a truck driver and to eliminate from his employment record the discipline received as a result of the incident;

6. And, a declaration from this Court that self-defense is not included within the Employment Contract's definition of fighting, and Ohio law recognizes an individual's right to self-defense.

Respectfully submitted,

/s/ *Hallee M. Loy*
Hallee M. Loy (104591)
Mallory Law Office, LLC
1733 West Lane Avenue
Columbus, OH 43221
Phone: (614) 743-8617
hallee.loy@mallorylawoffice.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff, Jeremy Loy, hereby demands a trial by jury on all issues relating to this case.

*/s/ Hallee M. Loy*
Hallee M. Loy (104591)

## ARTICLE 6 – PROBATIONARY EMPLOYEES

<u>SECTION 1</u>: All new hires are probationary employees for the first 90 calendar days from the time probationary employees get their commercial driver's license, should their job classification subject them to be required to have their commercial driver's license, and shall be paid wages at a rate of $.75 below current wages. The company has the sole discretion to a review a probationary employee prior to the 90 calendar days as stated above.

<u>SECTION 2</u>: Termination of employment during the probationary period shall not be the proper subject of a grievance or hearing.

## ARTICLE 7 – GRIEVANCE AND ARBITRATION PROCEDURE

<u>SECTION 1</u>: DEFINITION

A grievance is a claim that the Company has violated this Agreement. If the Company raises an issue that a grievance is not valid or arbitrable, it may proceed to answer and process the grievance in accordance with all terms of this Article. This will not waive the Company's right to challenge the validity or arbitrability of the grievance. All time limits for processing grievances shall be calendar days; however, if the time limit is less than seven (7) days, Saturdays, Sundays and holidays shall not be included.

<u>SECTION 2</u>: PROCEDURE

(a) All grievances shall be handled exclusively as set forth in this Section. Any settlement reached between the representatives designated to handle that step shall be final and binding.

(b) If a grievance is not filed or appealed on time, it shall be considered dropped. If the Company does not answer on time, the grievant, at their option, may elect to have the matter considered at the next step without delay. All time limits may be extended by mutual agreement, but any such extension must be in writing and signed by the personnel Manager or their designate.

<u>SECTION 3</u>: STEPS

The Company and the Union shall cooperate to provide for the prompt adjustment of grievances in a fair and reasonable manner, with a minimum of interruption of work schedules. Every reasonable effort shall be made by both the Company and the Union to resolve grievances at the earliest step possible. To carry this out, the aggrieved employee shall first attempt to settle

Case: 2:25-cv-00154-SDM-KAJ Doc #: 1-3 Filed: 01/21/25 Page: 13 of 18 PAGEID #: 51
Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Dec 17 2:05 PM-24CV009351
0H108 - Q40

**EXHIBIT B**

## ANDERSON CONCRETE

## WORK RULES

Section 1: The Work Rules (hereinafter, "rules"), Attendance Policy, and other policies referred to below are necessary for the orderly operation of the Company, and for the benefit and protection of the rights, safety, and security of bargaining unit and Company personnel.

Section 2: Any employee who violates the rules below may be disciplined or discharged, in accordance with the rules set forth below either by immediate termination or a four (4) step progressive disciplinary procedure (documented verbal warning, written warning, suspension, discharge), which may be accelerated depending upon the circumstances of each case, consistent with the terms set forth below.

Section 3: All disciplinary actions will be cumulative for a period of twelve (12) months worked from the date of first infraction. A month is defined as any month in which the employee has worked at least one day.

Section 4: The rules are as follows:

(a) GROUP 1 OFFENSES: Violation of these rules may subject an employee to discharge for the first offense. If the Company proves that an employee engaged in an act or omission prohibited by the Group 1 rules set forth below, the contractual "just cause" standard shall not apply to the level of discipline.

  1. Deliberately falsifying any reports including reports of an accident, workers' compensation, absences, sickness or personnel records; supplying falsified information; refusing to give information or testimony when an accident is being investigated.

  2. Possession or consumption of illegal drugs or alcohol during the workday. A positive result on a drug or alcohol test given to any employee or any refusal to submit to such a test. Drug and alcohol tests shall be conducted in accordance with the rules and regulations of the Ohio Department of Transportation regardless of whether the employee is covered by the rules and regulations of the Department of Transportation.

  3. Bringing or possessing firearms, explosives or weapons onto Company premises, property, or equipment, provided carrying a legal "pocket knife" on one's person is not prohibited.

  4. Striking in violation of the "non-strike" clause.

  5. Being convicted of a felony conviction for which a period of confinement is ordered.

  6. Refusing to consent to a search conducted in accordance with the terms of the collectively bargained "Search Policy".

7. Stealing Company property or that of another employee, or a customer.

8. Deliberately punching another employee's time card or permitting another employee to punch one's own time card.

9. Deliberate interference with the production or the work of another employee or customer.

10. Deliberately damaging, destroying, mutilating or defacing tools, equipment or property of the Company or another employee.

11. Engaging in conduct prohibited by the collectively bargained "No Harassment Policy"

12. Insubordination. (Article 9 – Discharge, Section 2)

13. Threatening, intimidating, or coercing other employees, members of management or customers, or directing abusive remarks to management or a customer; interfering with the activities of another employee or customer in the performance of their work; or directing abusive, vile or insulting remarks to or about management or a customer.

14. Fighting, physically assaulting any person or acting with intent to inflict bodily injury to another employee.

15. Carrying unauthorized passengers.

16. Work-related dishonesty.

17. Abandoning one's job assignment or location without the express permission of a supervisor.

18. Engaging in any personal business that interferes with the work of the employee or the work of another. "Personal business" is business that is not Company business.

19. Failure to maintain a valid, required commercial driver's license.

20. Being in possession of a master or sub-master key or any reproduction thereof, unless specifically authorized by management.

21. Disregarding established or normal safety, fire and health regulations, practices and precautions; being careless regarding the safety and health of fellow employees, causing or contributing to unsafe or unsanitary conditions, engaging in horseplay, or throwing objects resulting in property damage or personal injury.

22. Committing immoral or indecent acts while on duty.

23. Performing unsatisfactory work by willfully or negligently producing defective products or performing defective work, wasting supplies and materials of any kind.

this grievance with their supervisor. If a settlement is not reached, the following procedures shall be followed:

STEP 1: In order for a grievance to be arbitrable, the aggrieved employee must present their signed grievance in writing to their supervisor (or the person they have designated in writing to take their place in the grievance procedure) within fourteen (14) calendar days of the occurrence of the incident giving rise to the grievance. The Supervisor (or designate) shall schedule a meeting with the grievant and their steward within ten (10) calendar days after receipt of the grievance. If not resolved at this step, the supervisor shall respond in writing to the grievant within ten (10) calendar days following the meeting.

STEP 2: If the grievance remains unsettled, the employee must, if they wish to proceed further, appeal it in writing, signed, to the Company's Personnel Manager (or the person designated by them in writing for these purposes) within ten (10) calendar days after the Supervisor's response. The Personnel Manager (or their designate) shall schedule a hearing with the Business Agent or their designate, a Union steward and the grievant if available, within ten (10) calendar days. The Personnel Manager (or designate) shall have ten (10) calendar days following the hearing in which to respond in writing to the grievant's steward.

SECTION 4: ARBITRATION

(a) If the Union wishes to proceed further, it must file a written notice with the Personnel Manager of its request to submit the grievance to arbitration, within sixty (60) calendar days of receipt of the Company's answer at Step 2. The arbitrator shall be selected under the rules of the FMCS National Academy of Arbitrators, unless the Company and the Union mutually agree upon an arbitrator. The decision of the arbitrator shall be binding on the Company, the Union, and the grievant. The arbitrator shall not have the power to add to, subtract from or modify this Agreement. The arbitrator shall have no authority to rule on any jurisdictional dispute between this Union and another union or between employees represented by this Union and another union, or with other units of employees. The arbitrator shall have no authority to rule on anything that happens before the initial effective date of this Agreement or after the termination date of this Agreement. The docket fee for the services of the FMCS National Academy of Arbitrators and the costs of the arbitrator shall be paid equally by the Company and the Union.

(b) During the sixty (60) day time period, in a discharge case, the President of Local 284 can obtain a meeting with the President of Anderson to discuss the merits of the

discharge and to raise any issue regarding either the facts surrounding the discharge or the level of punishment for the infraction. This meeting will not affect the time periods for the Union to elect arbitration.

### SECTION 5: MULTIPLE GRIEVANCES

No more than one grievance shall be placed before an arbitrator at any one hearing and in no instance shall there be multiple (2 or more) grievances heard by any arbitrator unless the company and the Union agree to waive this provision.

### SECTION 6: CONTENT

In order to be arbitrable, all grievances must contain the following information and must be filed using the grievance form mutually agreed to by the parties:

(a) Aggrieved employee's name and signature.

(b) Aggrieved employee's classification.

(c) Date grievance was filed in writing.

(d) Date and time grievance occurred.

(e) Where grievance occurred.

(f) Description of incident giving rise to the grievance.

(g) Specific Sections of Agreement violated.

(h) Desired remedy to resolve grievance.

**SECTION 7:** A grievance may be brought by any member of the bargaining unit or the Union. Where a group of bargaining unit members desire to file a grievance involving a situation affecting each member in the same manner, Union Stewards will be able to file a Class Action grievance on behalf of the membership without signatures of every member.

### SECTION 8: LIMITATION OF DAMAGES

The arbitrator may not award any punitive damages or pain and suffering damages or any other damages beyond making the grievant whole. Making the grievant whole shall include, at

Franklin County Ohio Clerk of Courts of the Common Pleas- 2024 Dec 17 2:05 PM-24CV009635
Case: 2:25-cv-00154-SDM-KAJ Doc #: 3 Filed: 01/21/25 Page: 17 of 18 PAGEID #:
0H108 - Q44
EXHIBIT D

SECTION 3: The Company shall engage in no lockout during the term of this Agreement.

## ARTICLE 9 – DISCHARGE

SECTION 1: The Company has the right to discharge or discipline employees for just cause or for violation of rules, and to discharge or discipline probationary employees with or without cause. No employee who has completed the probationary period may be discharged or disciplined except for just cause or for violation of the Company's Work Rules. The Work Rules and Policies negotiated by the Company and Union are hereby adopted by reference and made a part of the contract. A grievance protesting termination of employment shall be filed at Step 2 within the time limits for Step 1. The Business Representative will receive a copy of all documented discipline.

SECTION 2: Where a suspension or discharge is for dishonesty, carrying unauthorized passengers, possessing or using alcoholic beverages or drugs while on duty, being under the influence of alcohol or drugs, or fighting, no hearing is required in advance. In other cases, such as refusal to obey a direct order, the Company will give the employee a hearing in advance of taking action, with an officer of the Union present, unless the Union waives its right to be present by failing to appear. If the Union is unable to attend within forty-eight (48) hours of being notified (not counting Sundays or holidays), then the hearing may proceed without the Union's being present. If the Company violates the requirements of a preliminary hearing, it shall pay the employee sixteen (16) hours pay as a penalty, but this will not invalidate the discipline or discharge imposed.

## ARTICLE 10 – LEAVE OF ABSENCE

SECTION 1: Requests for leaves of absence must be in writing and approved by the Company and the Union and shall not exceed ninety (90) days duration. Seniority shall accumulate during leaves of absence.

SECTION 2:

(a) Any employee leaving the employ of the Company to serve in the Armed Forces of the United States, either by enlistment or through Selective Service, shall, upon being honorably discharged from such service and reporting for work within ninety (90) days after discharge, be re-employed by the Company, provided there is work for which they can qualify. Their seniority shall accumulate during the time spent in such service.

(b) This shall also apply to summer camps and/or field exercises or any other requirements now in force or which will become effective in the future, which will require any



## Teamsters Miscellaneous and Industrial Workers

and the geographical Jurisdiction of which is: Counties of Delaware, Fayette, Franklin, Madison, Pickaway, & Ross County

### Local Union No. 284
555 East Rich Street • Columbus, Ohio 43215-5396
Phone: (614) 228-0727 • FAX: (614) 228-0901 • Toll Free: 1-800-237-1201

EXHIBIT E

OFFICERS:

MARK VANDAK
President

JOE SPAHR
Secretary-Treasurer

BRIAN BARROWMAN
Vice President

BILL MERDEATH
Recording Secretary

JOSH KINCAID
Business Agent

BJ WILSON
Trustee

FRED PRICE
Trustee

AMIE CENTES
Trustee

December 3, 2024

Brother Jeremy Loy
17680 Clarks Run Road
Mt. Sterling Oh 43143

Article- work rule

Brother Jeremy:

This letter is to inform you that, after consultation with legal counsel and the Executive Board of Teamsters Local Union No. 284, the decision was made NOT to arbitrate the above referenced grievance.

If you have any questions, please contact Josh Kincaid.

Fraternally,

TEAMSTERS LOCAL UNION NO. 284

*Mark Vandak*

Mark Vandak
President